UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Darren Couture,

        Plaintiff,

               v.                        Civil Action No. 5:16–cv–304–gwc–jmc

Sue Blair and
the Vermont Parole System,

        Defendants.

## REPORT AND RECOMMENDATION
(Doc. 7)

Plaintiff Darren Couture, an inmate presently in the custody of the Vermont

Department of Corrections (DOC) and proceeding *pro se*, has filed this civil rights action

pursuant to 42 U.S.C. § 1983 against Defendants Sue Blair, Director of the Vermont

Parole Board, and the Vermont Parole System (hereinafter Vermont Parole Board).[1]

(Doc. 4 at 1.) Couture alleges that Defendants violated his rights under the Fourteenth

Amendment, the Eighth Amendment, the Americans with Disabilities Act (ADA), and

the Rehabilitation Act, in the context of a preliminary parole revocation hearing, at which

---

[1] Construing the Complaint liberally, the Court presumes that Couture intended to sue the Vermont Parole Board, rather than the "Vermont Parole System" (Doc. 4 at 1), an entity that does not exist. In any event, Couture seemingly refers to the "Vermont Parole System" and the "Vermont Parole Board" interchangeably in his papers, and his claims against the "Vermont Parole System" are based on alleged wrongdoing by the Vermont Parole Board and its members. (*See, e.g.*, *id.* at 9–10 ("The Vermont Parole System, its policies, practices, and pr[o]cedures systematically discriminate against parolees with disabilities in violation of the [ADA and Rehabilitation] Act."; *id.* at 4 ("The Vermont Parole Board currently engages in a systematic and widespread discrimination in regards to parolees, which violates the ADA [and Rehabilitation] Act.").) Moreover, in his Response to Defendants' Motion to Dismiss, Couture states that he seeks declaratory and injunctive relief "against Blair and the Vermont Parole Board in their 'official capacities.'" (Doc. 10 at 8.)

time he was on suicide watch and suffering from other ADA-qualifying disabilities.  (*Id.* at 1–5.)  Couture also alleges that constitutional violations are generally pervasive throughout the parole system in Vermont.  (*Id.*)

Couture seeks several forms of injunctive relief, including "system-wide injunctive relief," to address Defendants' alleged discrimination against individuals with mental disabilities.  (*Id.* at 7.)  Additionally, Couture seeks the instatement of an ADA Coordinator to oversee the Vermont Parole Board, among other measures to ensure that parolees with disabilities are adequately represented with access to appropriate resources, and the dismantling and replacement of the current Vermont Parole Board.  (*Id.* at 7–8, 11–12.)  Couture further requests "a declaratory judg[]ment" stating that: Defendants' discrimination against him violated his rights under the Fourteenth and Eighth Amendments, the ADA, and the Rehabilitation Act; his right to a fair and impartial hearing was violated; and Defendants are retaliating against him for filing this litigation "by refusing to grant him a Parole Hearing."  (*Id.* at 10–11.)  Finally, Couture seeks compensatory damages against Blair totaling $410,000 for his loss of employment, personal property, and quality of life, as well as emotional damages, punitive damages in the amount of $500,000, and a federal audit of the Vermont Parole Board's records.  (*Id.* at 12–13.)

Presently before the Court is Defendants' Motion to Dismiss.  (Doc. 7.) Defendants make the following arguments therein: (1) Couture's claims are barred by res judicata because of a prior action brought by Couture in this Court, against the same

Defendants, and involving the same parole revocation proceedings (*id.* at 2–3);
(2) Couture's claims are barred by the abstention doctrine because of a pending state
court matter arising from the same factual circumstances existing in this case (*id.* at 3–4);
(3) Couture's official capacity claims against Blair and his claims against the Vermont
Parole Board are barred by sovereign immunity (*id.* at 4–6); (4) Couture has failed to
allege any violations of his constitutional rights under § 1983 (*id.* at 6–11); (5) Couture's
ADA claims fail because the statute does not allow individual capacity suits against state
officials, his other ADA claims are barred by sovereign immunity, and he has failed to
allege a prima facie case under the ADA (*id.* at 12–16); and (6) Couture has failed to state
a claim for punitive damages (*id.* at 16).  Couture has filed a Response to Defendants'
Motion to Dismiss.  (Doc. 10.)

　　　For the reasons set forth below, I recommend that the Court GRANT Defendants'
Motion to Dismiss (Doc. 7) and DISMISS Couture's Complaint (Doc. 4).

## <u>Background</u>

　　　For the purpose of deciding Defendants' Motion, all factual allegations contained
in Couture's Complaint, as summarized below, are accepted as true.  *See Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  "[T]he complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference."  *Chambers v.
Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network,
Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Although typically on a

motion to dismiss a court may consider only the sufficiency of the allegations in the complaint, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials," *Gadson v. Goord*, No. 96 Civ. 7544(SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997), including affidavits and other attachments to the plaintiff's opposition to the motion to dismiss. *See, e.g.*, *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering *pro se* plaintiff's allegations in opposition affidavit); *Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002). Couture has attached several news articles to his Complaint, along with numerous affidavits filed by him and other parolees in his state court proceeding, which is currently pending in the Washington Superior Court, *Couture v. Pallito*, Docket No. 714-11-14 Wncv (Vt. Sup. Ct.). (*See generally* Docs. 4-1–4-3.)

Couture's Complaint is not the picture of clarity, but it appears to allege the following. Couture "has been diagnosed with" and "currently suffer[s] from" the following "disorders": posttraumatic stress, anxiety, panic attacks, and depression with "suicide ideations," all of which Couture claims are "qualified disabilities" under the ADA and the Rehabilitation Act. (Doc. 4 at 3.) On or about December 17, 2013, Couture voluntarily committed himself to the Brattleboro Retreat Center after an attempted suicide, which he notes would have alerted the Vermont Parole Board to his mental disabilities. (*Id.*) Couture was apparently on parole at this time until March 20, 2014, when he was arrested for a parole violation. (*Id.*) During the parole revocation proceedings that followed, Couture was "on suicide watch." (*Id.*)

A preliminary probable cause hearing was held on April 1, 2014, during which Couture was denied the opportunity "to confront and challenge evid[e]nce." (*Id.*) Without Couture's knowledge, the chairman of the Vermont Parole Board forged the preliminary hearing documentation to indicate that Couture had waived the hearing. (*Id.* at 4.) The hearing was conducted by the entire Parole Board instead of by one member as required by the Vermont Parole Manual, and no witnesses or evidence were presented. (*Id.* at 3–4.) The Parole Board did not ensure that Couture was provided with "necessary accomm[o]dations" for his mental illness as required by the ADA and Rehabilitation Act. (*Id.* at 4.) The Parole Board used Couture's condition against him by attempting to intimidate him "(shaking papers in his face)," refusing to allow him to challenge the evidence, and forging the hearing waiver. (*Id.*)

After the proceedings, Blair voiced concern that Couture agreed to waive the hearing in an e-mail, demonstrating that Blair apparently "allowed an uninformed waiver to be made in violation of law" (*id.* at 5), because she knew that Couture "had not seen any of the information they had against [him]" (Doc. 4-1 at 2). Couture's parole was revoked,[2] and his subsequent appeals were denied (Doc. 4 at 5–6). He is currently incarcerated at the Northern State Correctional Facility in Newport, Vermont (*id.* at 2), and Defendants are allegedly denying him a parole hearing for which Couture claims he is eligible (*id.* at 10, 11).

---

[2] In Couture's Response to Defendants' Motion (Doc. 10), he clarifies that his parole was revoked in May 2014 after Defendants "used his mental illness against him," resulting in Couture waiving his "final hearing." (*Id.* at 1, 9.)

Couture further alleges widespread discrimination and wrongdoing by the Vermont Parole Board and Blair dating back to 2007, especially toward parolees struggling with mental illness. (*See generally* Doc. 4.) Couture claims that the Parole Board "acts as a rogue entity . . . disregarding all Constitutions" and state and federal law (*id.* at 5), and that it is known for forging hearing waivers and intimidating individuals into waiving hearings (*id.* at 4–5). "Several offenders have discovered waivers in their files without their signatures and their parole ha[s] been denied because of the waivers." (*Id.* at 8.) With respect to Blair, Couture alleges that she failed to properly supervise the Parole Board (*id.* at 7), that she attempted to conceal wrongdoing by Board members (*id.* at 7, 13), and that she is "bias[ed] and unqualified" to head the Board because she is a victim of an attempted crime (*id.* at 3).

In his Response to Defendants' Motion, seemingly contradicting his Complaint, Couture states that he "does not challenge" the parole revocation hearing waivers "or his incarceration, but rather the deliberate, in[s]idious and intentional violations" of his rights under the Constitution and the ADA. (Doc. 10 at 1.)

## <u>Analysis</u>

### I.    Res Judicata

Defendants first argue that Couture's claims are barred by res judicata or claim preclusion. (Doc. 7 at 2–3.) Defendants note that in 2014, Couture brought an action in this Court, against the same defendants, raising similar claims, and involving the same parole revocation proceedings. (*Id.* at 3); *see Couture v. Blair*, No. 5:14-cv-220-gwc

6

(D. Vt. 2015).[3]  Even though Couture has added some new claims in this case (including

violations of his Eighth Amendment and ADA rights), Defendants argue that these claims

arise out of the same transaction at issue in the prior litigation and thus are barred.  (Doc.

7 at 2–3.)  Couture responds that res judicata does not apply because in the prior

proceeding he sought "a new parole hearing and immediate release," implying that he

now seeks a different form of relief.  (Doc. 10 at 4.)  Couture further argues that in the

prior litigation, his claims were dismissed as barred by *Heck*, *see Heck v. Humphrey*, 512

U.S. 477 (1994), rather than "for failing to state a claim upon which relief c[ould] be

granted" or "for any reasons stated in this current case."  (Doc. 10 at 4.)  Couture also

claims that he should be allowed to challenge "any new issues" because they "have never

been litigated" and have not "received any final judg[]ment."  (*Id.*)

Res judicata "bars later litigation if [an] earlier decision was (1) a final judgment

on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same

parties or their privies, and (4) involving the same cause of action."[4]  *Jeter v. New York*

*City Dep't of Educ.*, 549 F. Supp. 2d 295, 304 (E.D.N.Y. 2008) (alteration in original)

---

[3] The Court takes judicial notice of the prior proceeding and documents filed therein.  *See, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in [other actions], . . . not for the truth of the matters asserted [therein], but rather to establish the fact of such litigation and related filings."); *Briggs v. Warfield*, No. 2:06–CV–227, 2007 WL 4268918, at *3 (D. Vt. Nov. 30, 2007) ("When a party moves to dismiss on the basis of *res judicata*, the Court may consider both the face of the complaint and matters of which the Court may take judicial notice, including prior court decisions."); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) ("[A] court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court.").

[4] This is the test for res judicata in the Second Circuit.  The court "appl[ies] federal law in determining the preclusive effect of a federal judgment."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

(quoting *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)); *see also Brown Media Corp. v. K&L Gates, LLP*, Docket No. 15–4185–cv, 2017 WL 1360770, at *5 (2d Cir. Apr. 14, 2017). Under the first requirement, a Rule 12(b)(6) dismissal "is presumed to be on the merits, unless the record states otherwise, and[] the judgment has the same effect as res judicata as though rendered after trial." *Carthaginian Fin. Corp. v. Skinner, Inc.*, No. 2:05–CV–3, 2005 WL 1388689, at *3 (D. Vt. June 3, 2005) (collecting cases). However, "[a] Rule 12(b)(6) dismissal 'will not bar a second action if new facts have come into existence or have been alleged for the first time and it was the absence of these facts that made the first complaint defective.'" *Id.* at *4 (quoting *Criales v. Am. Airlines, Inc.*, 105 F.3d 93, 97 (2d Cir. 1997)). Next, if the parties in both actions are not identical, "[p]rivity requires that a nonparty to an earlier litigation must have had his or her interests adequately represented in the prior proceeding by reason of identity of legal interest or control in the first action." *Council v. Better Homes Depot, Inc.*, No. 04 CV 5620(NGG)(KAM), 2006 WL 2376381, at *4 (E.D.N.Y. Aug. 16, 2006) (citing *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004)).

Under the final element, two matters involve the same cause of action "where the transaction or connected series of transactions at issue in both suits is the same[—]that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997); *see also Brown Media*, 2017 WL 1360770 at *5. The court considers "whether the underlying facts are 'related in time, space, origin, or motivation,

8

whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations . . . .'" *Interoceanica*, 107 F.3d at 90 (quoting Restatement (Second) of Judgments § 24(b) (1982)). "Immaterial factual differences do not remove a claim from the purview of *res judicata*." *In re Rodriguez*, 327 B.R. 86, 93 (Bankr. D. Conn. 2005) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)). By contrast, "[i]f the second litigation involve[s] *different* transactions, and especially *subsequent* transactions, there generally is no claim preclusion." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (emphases added). For example, in *Proctor v. LeClaire*, 715 F.3d 402 (2d Cir. 2013), the Second Circuit determined that different transactions were involved where an inmate challenged his original placement in administrative confinement in the first suit, and challenged a later decision to extend that confinement in the second suit. *Id.* at 412–13. The court explained that if these decisions were treated as "a single transaction for res judicata purposes, a judgment ruling that there was no due process violation in the original administrative confinement would, in effect, relieve subsequent reviewers of any due process constraints." *Id.* at 413.

But if claims do in fact "arise from the same transaction or occurrence," "[e]ven claims based upon different legal theories are barred" by res judicata. *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999); *see also Brown Media*, 2017 WL 1360770 at *5 ("A party cannot avoid the preclusive effect of res judicata 'by asserting a new theory or a different remedy.'" (quoting *Sure-Snap Corp. v. State St. Bank and Tr. Co.*, 948 F.2d 869, 875 (2d Cir. 1991))); *Angell v. U.S. Army Corps of*

*Eng'rs*, 149 F. App'x 34, 36 (2d Cir. 2005) (barring subsequent lawsuit seeking a different form of relief but arising out of the same transaction); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to frame her complaint."); *Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata.").  In other words, "a plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories"—the doctrine applies irrespective of the legal issues the plaintiff chooses to focus on in each action.  *Waldman*, 207 F.3d at 110.  Accordingly, res judicata not only prevents "the parties or their privies from relitigating issues that were" litigated in the first action, but also those issues that "*could have been raised* in that action."5  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis added); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).  In the

---

5 New York and Connecticut, in weighing the impact of a prior state court action on a subsequent federal court proceeding, have recognized a res judicata exception adopted from the Restatement (Second) of Judgments.  *See, e.g., Fayer v. Town of Middlebury*, 258 F.3d 117, 124 (2d Cir. 2001) (discussing Connecticut law); *Antonsen v. Ward*, 943 F.2d 198, 201 (2d Cir. 1991) (discussing New York law).  This exception allows a litigant to assert a claim that could have been raised in the first action if "formal barriers" prevented him from doing so.  *Antonsen*, 943 F.2d at 201.  But the Second Circuit has suggested that a litigant's "own lack of diligence prevent[ing] consideration of the issue" does not constitute a "formal barrier."  *Id.* at 202.  Assuming this rule applies here, Couture does not point to any formal barriers preventing him from raising his additional § 1983 and ADA claims in the first matter.  And even considering Couture's *pro se* status, he had ample opportunity to assert all of his claims in that matter, especially because he was twice granted leave to amend his complaint.  *Couture*, No. 5:14-cv-220-gwc, ECF Nos. 10, 25.  Thus, Couture's failure to raise the new legal theories raised in this case appears to be merely a result of his "own lack of diligence."  *Antonsen*, 943 F.2d at 202.

§ 1983 context, courts have thus held that res judicata bars constitutional or statutory claims that could have been raised in the earlier proceeding. *See, e.g.*, *Melnitzky v. Jones*, No. 07-CV-7380 (JGK), 2008 WL 3884361, at *5 (S.D.N.Y. Aug. 21, 2008); *Coolidge v. Coates*, No. 1:06–CV–92, 2006 WL 3761599, at *3 (D. Vt. Nov. 20, 2006); *Mennella v. Office of Court Admin.*, 938 F. Supp. 128, 133 (E.D.N.Y. 1996).

For example, in *Mennella*, the plaintiff had alleged due process violations under the Fifth and Fourteenth Amendments on the basis of the defendants' failure to promote him. 938 F. Supp. at 133. This initial § 1983 suit was dismissed. *Id.* at 132. In a second action, plaintiff again asserted violations of his Fifth and Fourteenth Amendment rights, and also added employment discrimination and retaliations claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. *Id.* at 129, 130. The plaintiff named essentially the same defendants, adding the employing agency of three of the defendants. *Id.* at 130. Comparing the complaints from both actions, the court explained that notwithstanding the new claims and the new defendant, both suits "sought to remedy the same alleged wrongful conduct, namely the defendants['] failure to promote the plaintiff," and the second suit was accordingly barred. *Id.* at 133. Similarly, in *Waldman*, the court held that a plaintiff's action seeking total dissolution of a village was barred by res judicata because of his previously dismissed claims that the village had violated the First and Fourteenth Amendments and the Fair Housing Act in providing public housing. 207 F.3d at 107–08. The plaintiff "alleged many of the same facts" in both suits and the court held that any "new allegations" were essentially reiterations of

the plaintiff's earlier claims, all of which arose out of the underlying contention that the village was promoting religious discrimination. *Id.* at 109, 113.

Applying this law here, I conclude that Couture's suit is barred by res judicata. This Court dismissed Couture's first suit for failure to state a claim under Rule 12(b)(6) (*see Couture*, No. 5:14-cv-220-gwc, ECF No. 29), a final decision on the merits by a court of competent jurisdiction.[6] *See Carthaginian*, 2005 WL 1388689, at *3 (collecting cases). Couture alleges no new facts in this suit, and no facts that would have remedied his first suit had they been pleaded while it was pending. *See id.* at *4; *Criales*, 105 F.3d at 97. Moreover, both cases involve essentially the same parties. In the first case, Couture named Sue Blair and three Vermont Parole Board members who were also hearing officers during his parole revocation proceedings. *See Couture*, No. 5:14-cv-220-gwc, ECF No. 24 at 1. Here, Couture again names Blair as a defendant and also names "the Vermont Parole System," which, as stated above, is presumed to be a reference to

---

[6] Couture also filed a "Motion Requesting Granting of Dual Mandatory Injunction and Prohibitor[y] Injunction" in the previous case, *Couture*, No. 5:14-cv-220-gwc, ECF No. 28, in which he requested that the Court:

> [D]ismantle the current Vermont State Board of Parole; order the establishment of a new parole board composed of unbiased members; order the Vermont Legislature to rewrite the policies, directives, and procedures that govern the parole board; order the establishment of a parole board monitoring agency; grant Couture a new parole hearing before the unbiased parole board; enjoin defendants and the Department of Corrections from retaliating against Couture for his litigation; and remind the State that the revocation of parole is designed for those who cannot refrain from committing criminal behavior.

*Id.*, ECF No. 30 at 1 (citing *id.*, ECF No. 28). Couture requests substantially the same relief here. But this request for relief was denied as moot in the earlier case because the Court had granted the Defendants' motion to dismiss. *Id.* at 2. Couture appealed that denial to the Second Circuit Court of Appeals, *id.*, ECF No. 32, which dismissed the appeal, finding that it "lack[ed] an arguable basis either in law or in fact," *id.*, ECF No. 34 at 1 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

the Vermont Parole Board.  (Doc. 4 at 1.)  Assuming these parties are not identical, it is

clear that the Vermont Parole Board's interests were adequately represented by Blair and

the Parole Board members in the first action "by reason of identity of legal interest or

control," because these individuals both comprise the Vermont Parole Board and direct

its actions.  *See Council*, 2006 WL 2376381, at \*4.

Comparing the factual allegations in both suits, they clearly involve the same

causes of action because they arise from the same "transaction or occurrence"—namely

Couture's 2014 parole revocation proceedings.  *See, e.g.*, *L-Tec. Elecs.*, 198 F.3d at 88.

Unlike the plaintiff in *Proctor*, Couture does not point to any additional hearings

conducted by Defendants after he filed the original suit, or any other new, subsequent

acts giving rise to his claims here.  *See Proctor*, 715 F.3d at 412–13.  In fact, Couture's

legal and factual allegations from the first action[7] essentially mirror those he sets forth

here.  In the first action, Couture discussed the April and May 2014 parole revocation

proceedings and alleged that the Parole Board considered uncorroborated and hearsay

evidence, and denied him the right to confront the witnesses and evidence against him;

and that he did not knowingly waive the violation hearing.  *See Couture*, No. 5:14-cv-

---

[7] Couture filed three complaints in the previous case, all of which are considered here.  *See Couture*, No. 5:14-cv-220-gwc, ECF Nos. 3, 5, 24.  Although "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), courts in this circuit have read original and amended complaints together where a plaintiff proceeds *pro se*.  *See, e.g.*, *Herbert v. Delta Airlines*, No. 12–CV–01250 (SLT)(LB), 2014 WL 4923100, at \*1 n.2 (E.D.N.Y. Sept. 30, 2014); *Nichairmhaic v. Dembo*, Civil Action No. 3:13–CV–01184 (JCH), 2013 WL 6385041, at \*1 n.1 (D. Conn. Dec. 4, 2013).  Moreover, Couture's Second Amended Complaint in the prior case explicitly incorporated the earlier complaints by reference.  *See Couture*, No. 5:14-cv-220-gwc, ECF No. 24, at 18 ("For further argu[]ments[,] plaintiff ask[s] the court to refer to [his] original filings and attachments."); *see also id.*, ECF No. 10 (Court granting Couture's first motion to amend, in which he requested the court treat the amended complaint as a continuance of his original complaint).

220-gwc, ECF Nos. 3 at 2–4, 7–8, 10; 24 at 5–10, 19–22.  He contended that the probable

cause hearing was conducted by the entire Vermont Parole Board "instead of [by] a non-

bias[ed] person."  *Id.*, ECF Nos. 3 at 7; 24 at 2, 9.  He argued that at the time of the

hearings, he was suffering from mental health conditions, including posttraumatic stress

disorder and anxiety, and that Board members shook papers at him.  *Id.*, ECF Nos. 3 at 8;

24 at 3.  He alleged general deficiencies by the Parole Board, including that Board

members are unfair and prejudicial, that Director Blair lacked the "ability to properly run

a fair and just parole board" because she had been the victim of a crime, *id.*, ECF Nos. 5

at 4; 24 at 20–22, and that the Board failed to adhere to its own manual and directives,

*id.*, ECF No. 24 at 10, 20.  Finally, in his prior case, Couture claimed violations of his

due process and equal protection rights, and sought various forms of relief including a

declaration that defendants had violated his rights under the Constitution and federal law,

injunctive relief, compensatory and punitive damages, and an order for the Board to

dismantle and rewrite its directives and polices in compliance with state and federal law.

*Id.*, ECF Nos. 3 at 14; 5 at 2–3, 5; 24 at 9–10, 23.

All of these factual allegations can be found in Couture's Complaint here.

Couture again claims that he was denied the right to challenge evidence at the parole

revocation proceedings (Doc. 4 at 3), that the preliminary hearing was waived without his

knowledge, and that the hearing was held by the entire Board instead of by a single

member (*id.* at 4–5).  He reiterates that he was suffering from mental illnesses at the time

of the proceedings and that Board members used these conditions against him, repeating

that they shook papers in his face. (*Id.* at 4.) Couture also restates general criticisms of

Defendants, alleging that the Parole Board and Blair disregard the law and that Blair is

"bias[ed] and unqualified" for her position because she was the victim of a crime. (*Id.* at

3, 5, 8.) Couture seeks substantially the same relief here as in his prior action. (*Id.* at

7–8, 10–13 (seeking, in part, an order dismantling the Board, a declaratory judgment that

Defendants violated Couture's rights under the Constitution and federal law, and

compensatory and punitive damages).)

     Because the underlying facts in both actions are essentially identical, they meet the

requirement that they be "related in time, space, origin, [and] motivation."

*Interoceanica*, 107 F.3d at 90 (quoting Restatement (Second) of Judgments § 24(b)).

Though in the first action, unlike here, Couture detailed his parole conditions, *see*

*Couture*, No. 5:14-cv-220-gwc, ECF Nos. 3 at 2–3, 12–13; 24 at 11–13, and the

ineffectiveness of his attorney, *see id.*, ECF Nos. 3-1 at 2; 24 at 2–3, 5, 14–17; and

though in this action, he includes particular facts regarding his struggles with mental

illness (*see* Doc. 4 at 3–4) that were not alleged in the first action; these are "[i]mmaterial

factual differences" that do not defeat res judicata. *In re Rodriguez*, 327 B.R. at 93

(citing *Waldman*, 207 F.3d at 113). It is also irrelevant that Couture may have sought

different forms of relief in the first action (*see* Doc. 10 at 4 (Couture arguing that in the

first case he sought a new parole hearing and immediate release)), *see, e.g.*, *Angell*, 149

F. App'x at 36, given that both suits seek "to remedy the same alleged wrongful

conduct"—the allegedly unconstitutional parole revocation proceedings.[8] *Mennella*, 938 F. Supp. at 133.

To the extent that Couture now raises new legal theories under the Eighth Amendment and the ADA, these claims arise from the same facts and thus could have been raised in the first action. *See, e.g.*, *Federated Dep't Stores*, 452 U.S. at 398; *L-Tec Elecs.*, 198 F.3d at 88. Like the plaintiffs in *Mennella* and *Waldman*, though Couture has purportedly added new claims, the underlying behavior he is challenging is the same. At the heart of both cases is Couture's challenge to his parole revocation proceedings and the general manner in which the Vermont Parole Board treats parolees during these proceedings. As previously noted, Couture cannot avoid application of the doctrine of res judicata by attempting to split "his claim into various suits[] based on different legal theories." *Waldman*, 207 F.3d at 110. Moreover, Couture's filings in the previous matter indicate that he had contemplated claims under the Eighth Amendment and the ADA

---

[8] Couture also argues that his previous suit was dismissed by this Court as barred under *Heck*, rather than "for failing to state a claim upon which relief c[ould] be granted, nor for any reasons stated in this current case." (Doc. 10 at 4); *see also Couture*, No. 5:14-cv-220-gwc, ECF No. 29 at 8–12. *Heck* and its progeny prohibit a state prisoner from seeking relief under § 1983 if his claim essentially challenges the validity of his incarceration—a challenge that can only be brought under 28 U.S.C. § 2254. *See Heck*, 512 U.S. at 487; *see also Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 201 (S.D.N.Y. 2004). However, Couture cites no authority, and the Court is aware of none, suggesting that a court's rationale for its dismissal has any bearing on the res judicata analysis. Couture is also mistaken because his previous suit *was* in fact dismissed for failure to state a claim, based on *Heck* as well as numerous other rationales, including sovereign immunity, absolute immunity, and failure to sufficiently allege an equal protection claim. *See generally Couture*, No. 5:14-cv-220-gwc, ECF No. 29. Furthermore, Couture's reasserted claims may well be *Heck*-barred again. *See Hill v. Goord*, 63 F. Supp. 2d 254, 261 (E.D.N.Y. 1999) ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether that denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits . . . . *Heck* does not permit this." (quoting *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997))). But the Court declines to engage in a *Heck* analysis here because Defendants have not raised the issue

16

when those filings were made. In a document attached to his original Complaint in the previous matter, Couture asserted that the Parole Board's actions constituted "cruel and unusual punishment"—seemingly alleging an Eighth Amendment violation—"punishing" him "by leaving his classification in limbo," resulting in "mental anguish/stress with no mental health counseling." *Couture*, No. 5:14-cv-220-gwc, ECF No. 3-1 at 1. And in his First Amended Complaint in the previous matter, Couture alleged that he was not able to properly litigate his case, in part because of "the ADA . . . violations he ha[d] been subject to by the V[ermont] Parole Board and DOC." *Id.*, ECF No. 5 at 4. He reiterated this claim in his Second Amended Complaint in the prior matter, alleging that the Board violated his rights under the ADA by disapproving of his mental health breakdown. *Id.*, ECF No. 24 at 9–10.

Couture's only potentially new claim is his allegation that Defendants are "retaliating against him for his litigation by refusing to grant him a Parole Hearing as required by statute." (Doc. 4 at 11.) Construing the Complaint liberally, this claim is presumed to be a First Amendment retaliation claim. But even assuming the claim is based on alleged retaliation that "occur[ed] after" Couture filed his first lawsuit, and thus is not barred by res judicata, the claim fails on its merits, as discussed in Section IV below. *Waldman*, 207 F.3d at 113.

As this Court has stated before, "[t]he Court is cognizant of the fact that applying res judicata, especially in a pro se case, can render harsh results." *Steuerwald v. Cleveland*, No. 1:14–cv–88–jgm, 2015 WL 1481564, at *6 (D. Vt. Mar. 31, 2015), *aff'd*, 651 F. App'x 49 (2d Cir. 2016). But "[t]he doctrine of *res judicata* is equally applicable

to *pro se* plaintiffs." *Iwachiw v. N.Y.C. Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002) (collecting cases); *see also Bey v. City of New York*, 454 F. App'x 1, 5 (2d Cir. 2011) ("[R]es judicata applies to *pro se* plaintiffs whose claims in a second action are based on the same factual predicates presented in the first action."); *Hameed v. Aldana*, 296 F. App'x 154, 154–56 (2d Cir. 2008) (affirming dismissal of *pro se* complaint on res judicata grounds); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205–06 (2d Cir. 2002) (affirming dismissal of *pro se* plaintiff's complaint as barred by res judicata where plaintiff raised new legal theories based on the same factual circumstances alleged in the first complaint). The Second Circuit has recently reaffirmed the "district court's authority to dismiss sua sponte a pro se complaint on res judicata grounds." *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014).

For these reasons, I recommend that the Court GRANT Defendants' Motion to Dismiss (Doc. 7) and DISMISS Couture's Complaint (Doc. 4) as barred by res judicata, except for Couture's First Amendment retaliation claim, which I recommend dismissing on different grounds, as discussed in Section IV below.

## II.    Abstention Doctrine

Defendants next argue that Couture's claims are barred by the abstention doctrine because of a parallel proceeding currently pending in state court, in which Couture has asserted constitutional challenges arising out of the same 2014 parole revocation proceedings. (Doc. 7 at 3–4; Doc. 7-2); *see Couture*, Docket No. 714-11-14 Wncv (Vt.

Sup. Ct.).9  Couture responds that although some facts between this matter and the state

litigation may overlap, the proceedings are not identical for the purposes of the abstention

doctrine.  (Doc. 10 at 5.)  Couture claims that while his state case challenges his

incarceration and alleges a violation of his due process rights, the instant matter involves

Blair's "supervisory liability," for allowing constitutional rights violations by her

subordinates and discrimination against Couture on the basis of his "mental disabilities."

(*Id.*)

Abstention "is an extraordinary and narrow exception to the duty of a [d]istrict

[c]ourt to adjudicate a controversy properly before it."  *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of*

*Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)); *see also Niagara Mohawk*

*Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir.

2012).  Under the *Colorado River* doctrine, a case pending in state court generally does

not bar federal court proceedings involving the same matter, except in the rare instance

"where the order to the parties to repair to the state court would clearly serve an

important countervailing interest."  *Colorado River*, 424 U.S. at 813 (quoting *County of*

*Allegheny*, 360 U.S. at 189).

---

9 The Court takes judicial notice of the pending state matter.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))); *see also Toliver v. City of New York*, Nos. 10 Civ. 3165(PAC)(JCF), 10 Civ. 6619(PAC)(JCF), 2011 WL 4964919, at *3 (S.D.N.Y. Sept. 15, 2011) ("[F]ederal courts are empowered to take judicial notice of state court records and decisions." (citing Fed. R. Evid. 201(b))).

In conducting an abstention analysis, the court must first determine the existence of concurrent, contemporaneous proceedings. *See, e.g.*, *Dittmer v. County of Suffolk*, 146 F.3d 113, 117–18 (2d Cir. 1998). "Cases are concurrent when they involve essentially the same parties and the same claims." *Ben & Jerry's Homemade, Inc. v. La Soul, Inc.*, 983 F. Supp. 499, 501 (D. Vt. 1997) (citing *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997); *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 17 F.3d 46, 50 (2d Cir. 1994)). If concurrent proceedings exist, the court then examines six factors, set forth by the Supreme Court in *Colorado River* and *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15 (1983), to determine whether to abstain from exercising jurisdiction:

> (1) the assumption of jurisdiction by either court over any res or property,
> (2) the inconvenience of the federal forum,
> (3) the avoidance of piecemeal litigation, . . .
> (4) the order in which jurisdiction was obtained[,] . . .
> (5) whether state or federal law supplies the rule of decision, and
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) (citing *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986)). "The Supreme Court has made clear that in applying the factors, the 'balance [is] heavily weighted in favor of the exercise of [federal] jurisdiction,'" because of "the 'virtually unflagging obligation' of federal courts 'to exercise the jurisdiction given them.'" *Rheaume v. Pallito*, Civil Action No. 5:11–CV–72, 2012 WL 821444, at *2 (D. Vt. Feb. 7, 2012) (alterations in original) (first quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S.

at 16, then quoting *Colorado River*, 424 U.S. at 817), *report and recommendation adopted*, 2012 WL 787404 (D. Vt. Mar. 8, 2012).

Neither party has addressed the *Colorado River* factors here.  In light of the strong presumption in favor of exercising jurisdiction, and because Couture's claims are barred by res judicata irrespective of abstention, I recommend that the Court decline to reach the abstention issue.  The parties, however, are directed to apprise the Court of any relevant decisions or developments in the Vermont Superior Court matter that may impact Couture's pending litigation in this Court.

### III.    "Person" Under § 1983 and Sovereign Immunity

Defendants argue that Couture's claims against the Vermont Parole Board, and against Blair in her official capacity for money damages, are not cognizable under 42 U.S.C. § 1983 because neither are "persons" under the statute, and because the Eleventh Amendment bars these claims.  (Doc. 7 at 4–6.)  In response, Couture clarifies that he only seeks monetary damages against Blair in her individual capacity, while he seeks declaratory and injunctive relief against her and the Vermont Parole Board in their official capacities.  (Doc. 10 at 8; *see also* Doc. 4 at 2.)

Section 1983 "provides a cause of action against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  The claimant may only sue a "person" within the meaning of § 1983.  *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "Neither a state nor

21

one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)); *see also Couture v. Blair*, No. 5:14–cv–00220, 2015 WL 1931548, at *3 (D. Vt. Apr. 28, 2015) ("It is settled that neither a state nor any entities that function as 'arms of the state' may be sued under 42 U.S.C. § 1983." (quoting *Komlosi v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995)) (dismissing claims for damages under § 1983 against Blair and other defendants in their official capacities in Couture's previous action in this Court)).

Furthermore, the Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). Suits against states and state entities are barred by sovereign immunity, irrespective of the type of relief sought. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (finding that prisoners' suit seeking to enjoin the Alabama Board of Corrections from engaging in allegedly unconstitutional prison practices was barred by the Eleventh Amendment). Sovereign immunity also extends to "state officials sued for damages in their official capacity," *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)), because these suits constitute litigation against the State itself, *Will*, 491 U.S. at 71. However, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar "an official capacity claim . . . brought against state officials for prospective, non-monetary relief." *Ramirez v.*

*Coughlin*, 919 F. Supp. 617, 623 (N.D.N.Y. 1996); *see also Pennhurst State Sch. &*

*Hosp. v. Halderman*, 465 U.S. 89, 102–03 (1984); *Ex parte Young*, 209 U.S. 123, 159–60

(1908).

There are two exceptions to the sovereign immunity doctrine: a state can waive its

immunity to suit, or Congress can abrogate a state's immunity by statute.  *Will*, 491 U.S.

at 66.  Neither exception applies here.  "Vermont has not waived its sovereign immunity

under § 1983."  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) (citing Vt.

Stat. Ann. tit. 12, § 5601(g)).  And Congress has not abrogated Vermont's immunity by

statute.  *See Muhammad v. Gold*, No. 1:05-CV-146, 2007 WL 3088133, at *2 (D. Vt.

Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to

abrogate state sovereign immunity, and the Supreme Court has specifically held that

Congress did not intend to override well-established immunities such as state sovereign

immunity when it enacted § 1983."  (citing *Will*, 491 U.S. at 67)).

Couture's claims against the Vermont Parole Board, a state entity created by

Vermont law, *see* Vt. Stat. ann. tit. 28, § 451, are thus barred by both § 1983 and the

sovereign immunity doctrine.  The Vermont Parole Board is not a "person" under § 1983,

and it is immune from suit under the Eleventh Amendment as an arm of the state, even if

Couture is seeking only injunctive and declaratory relief against it.  *See Pugh*, 438 U.S. at

782; *see also Cory v. White*, 457 U.S. 85, 91 (1982) ("[T]he Eleventh Amendment by its

terms clearly applies to a suit seeking an injunction . . . .").  Any official capacity claims

against Blair for monetary damages would also be barred by § 1983 and sovereign

immunity, but there is no need for analysis, given Couture's statement in his Response that he has not sued Blair in this capacity.  (Doc. 10 at 8.)

Accordingly, I recommend that the Court DISMISS all of Couture's claims against the Vermont Parole Board.  Insofar as Couture seeks monetary damages against Blair in her individual capacity, or prospective injunctive and declaratory relief against Blair in her official capacity under the *Ex parte Young* doctrine, these claims pass muster under § 1983 and are not barred by sovereign immunity because they do not constitute claims against the State of Vermont.  Nevertheless, these claims fail under res judicata, as discussed above.

## IV.    First Amendment Retaliation Claim

Regarding Couture's First Amendment retaliation claim, Defendants argue that Couture "has offered no facts to suggest that the filing of his lawsuits against Defendants have had any impact [on their] decision not to re-parole him."  (Doc. 7 at 9.)  It is well settled that "[p]risoners . . . have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners" for exercising this right under the First Amendment.  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)).  But "[c]ourts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491

24

(2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506

(2002)). Moreover, "because prisoner retaliation claims are 'easily fabricated,' and

accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of

general prison administration,' we are careful to require non-conclusory allegations."

*Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (quoting *Dawes*, 239 F.3d at 491);

*see also Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which

alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings

alone."), *overruled on other grounds by Swierkiewicz*, 534 U.S. 506.

Accordingly, to survive a motion to dismiss, a prisoner asserting a First

Amendment retaliation claim must make the following non-conclusory allegations:

"(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse

action against the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action." *Dawes*, 239 F.3d at 492.

Couture asserts that he is "currently being denied a parole hearing out of

retaliation for his disability and current litigation[]" against Defendants. (Doc. 4 at 10.)

He further states that he has been eligible for a parole hearing for nine months and he is

legally entitled to a hearing. (*Id.* at 11.) As to the first prong, "[i]t is well-settled that

filing a grievance or lawsuit is constitutionally protected conduct," thus Couture's

litigation is protected. *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 206 (N.D.N.Y. 2015)

(citing cases). Under the second factor, the Second Circuit has defined "adverse action"

objectively as "retaliatory conduct 'that would deter a similarly situated individual of

25

ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389

F.3d 379, 381 (2d Cir. 2004) (alteration in original) (quoting *Davis*, 320 F.3d at 353).

At least one court in this circuit has held that denial of parole in retaliation for litigation

"sufficiently describes adverse conduct that would deter a reasonable inmate from

exercising his rights." *Duffy v. Evans*, No. 11 Civ. 7605(JMF), 2012 WL 4327605, at

*11 (S.D.N.Y. Sept. 19, 2012) (citing *Dawes*, 239 F.3d at 493). The Court therefore

presumes that denial of a parole hearing constitutes adverse action by Defendants.

      Finally, "[t]o sufficiently allege a causal connection, [the plaintiff's] allegations

must support an inference that the protected conduct was 'a substantial or motivating

factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x

25, 27 (2d Cir. 2012) (quoting *Bennett*, 343 F.3d at 137). In addressing causal

connection, the court may consider the "temporal proximity" between the protected

conduct and the alleged retaliation, "prior good discipline," and "statements by

defendants as to their motives," among other factors. *Barclay v. New York*, 477 F. Supp.

2d 546, 558 (N.D.N.Y. 2007) (citing *Colon*, 58 F.3d at 872–73). Couture's retaliation

claim fails on this prong—he does not allege any facts to suggest that his pending

litigation is a substantial or motivating factor for Defendants' alleged refusal to grant him

a parole hearing, other than his conclusory statement that Defendants are retaliating. *See

Dorsey*, 468 F. App'x at 27 ("Without more, where . . . the plaintiff alleges the ultimate

fact of retaliation in a conclusory and speculative manner, he fails to state a claim for

retaliation."). In his Complaint, Couture states that he has been eligible for a parole

hearing for nine months, but he does not indicate how this delay—which preceded the

instant Complaint—could constitute retaliation for the current litigation.[10]  Couture also does not allege any facts with regard to his disciplinary record, and he does not claim that Defendants made any statements regarding their motives for the parole hearing delay.

Accordingly, I recommend that the Court DISMISS Couture's First Amendment retaliation claim.

## V.    Leave to Amend

In general, district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once, "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile."  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied").  Amendment is futile when the cause of action is substantively flawed and better pleading will not cure the complaint's defects.  *Cuoco*, 222 F.3d at 112; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

---

[10] If Couture is referring to retaliation for litigation beyond this case, he should clarify this in an amended complaint.  For example, if he alleges that Defendants retaliated in response to earlier state court proceedings, or his prior litigation in this Court, the causal connection, including the timing of the earlier litigation and the subsequent retaliation, should be clear on the face of the complaint.

I recommend that Couture be granted leave to amend, but only with respect to his First Amendment retaliation claim, and only insofar as he asserts this claim against Blair for monetary relief in her individual capacity, or for prospective equitable relief. All other claims against Defendants are barred by § 1983 and sovereign immunity, as discussed above. Moreover, any other amendment would be futile because Couture's remaining claims against Defendants are barred by res judicata. *See MacKinnon*, 580 F. App'x at 45–46 (affirming district court's decision to deny *pro se* plaintiff leave to amend where claims were barred by res judicata and amendment would have been futile).

## Conclusion

For the reasons set forth above, I recommend that the Court GRANT Defendants' Motion to Dismiss (Doc. 7) and DISMISS Couture's Complaint (Doc. 4). If this recommendation is adopted, I further recommend that Couture be allowed 30 days to file an amended complaint with respect to his First Amendment claim against Blair in her individual capacity for monetary relief, and/or for prospective equitable relief. Failure to file an amended complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 8th day of May, 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).